UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID O. BACA,<br><br>    Plaintiff,<br><br>  vs.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF CALIFORNIA HIGHWAY PATROL, SERGEANT GRIMES, SERGEANT TRUE, OFFICER B. RODGERS, OFFICER M. WILSON, OFFICER C. RANDALL, OFFICER B. JEFFERS, OFFICER B. PHILLIPS, and DOES 1-10,<br><br>    Defendants. | Case No: C 13-02968 SBA<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Dkt. 121, 122 |

Plaintiff David O. Baca brings the instant civil rights action, pursuant to 42 U.S.C. § 1983, against various California Highway Patrol ("CHP") officers and others, alleging claims for excessive force and the illegal search of his vehicle. He also alleges a state law claim for violation of his civil rights under California's Bane Act, California Civil Code § 52.1. A jury trial is presently scheduled to commence on April 11, 2016. Dkt. 108. In anticipation of trial, the parties have filed motions in limine, which have been fully briefed and are ripe for adjudication.[1]

---

[1] The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I. **INTRODUCTION**

    A.    FACTUAL SUMMARY

On the evening of June 15, 2011, Plaintiff was driving his vehicle along Interstate 80 when CHP Officers B. Jeffers and B. Philips allegedly observed him speeding and weaving in traffic. The officers followed Plaintiff and activated their emergency lights to pull him over. Plaintiff exited at the Central Avenue offramp in El Cerrito, California, and stopped at a gas station. After Plaintiff exited his vehicle as instructed, Officer Jeffers drove Plaintiff's vehicle to a dark side street and allegedly searched the vehicle's interior without consent. Defendants contend that they performed nothing more than a permissible inventory search prior to having the vehicle towed away.

The officers conducted various Field Sobriety Tests ("FSTs") on Plaintiff. Defendants claim that Plaintiff failed the FSTs, though Plaintiff states that he was never informed by the officers that he had failed to perform the FSTs satisfactorily. After Plaintiff refused to take a breathalyzer test, he was arrested and taken to the CHP Office in Oakland.

At the CHP Office, the officers ordered Plaintiff to submit a blood sample, but he allegedly refused. Plaintiff denies that he declined the officers' request, and claims that he simply asked to speak with an attorney and whether less invasive options, such as a urine test, were available. Plaintiff further avers that the officers refused his requests and slammed his face to the floor, and, while he was still handcuffed, beat and kicked him repeatedly on his back, legs, arms and head. As one of officers pinned Plaintiff to the floor, Kenneth Simonson, a phlebotomist, extracted two blood samples from Plaintiff's left arm.[2] The officers admit restraining Plaintiff face down on the floor, but maintain that they only used reasonable force to facilitate the blood draw. The toxicology report prepared by

---

[2] In their trial brief, Defendants indicate that they intend to call Mr. Simonson as a witness, even though he has no recollection of performing a blood extraction on Plaintiff on the evening in question. Defs.' Trial Brief at 5, Dkt. 110.

Central Valley Toxicology, Inc. ("CVT") indicates that Plaintiff's blood alcohol level was 0.11 percent. Defs.' Am. Opp'n Ex. D, Dkt. 124-1.

Following the blood extraction, the officers took Plaintiff to a patrol car to transport him to the Alameda County Jail. According to Plaintiff, the officers then lifted him by his handcuffs and dragged him outside, causing extreme pain and injuring him further, and placed a hood over his head. The officers counter that Plaintiff was disruptive in the patrol car and spat on the officers. At the jail, Plaintiff was stripped of all clothing (except for the hood that had been placed on him) and placed naked for several hours in a holding cell.

On December 5, 2011, Plaintiff appeared in the Alameda County Superior Court in connection with the various charges arising from his drunk driving arrest. Pursuant to a plea agreement negotiated by his counsel, Plaintiff pled no contest to a misdemeanor violation of California Vehicle Code § 23152(b), which makes it "unlawful for a person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle." According to the Clerk's Minutes from that hearing, the parties stipulated that the police report provided a "factual basis for the plea." Defs.' Am. Opp'n Ex. A, Dkt. 124-1. The police report, however, has not been provided to the Court.

B. **PROCEDURAL HISTORY**

On June 3, 2013, Plaintiff filed the instant action in the Alameda County Superior Court. Defendant County of Alameda (which is no longer a party) removed the action based on federal question jurisdiction. Plaintiff subsequently filed a First Amended Complaint ("FAC") against: the State of California; the Department of the CHP; Sergeant Grimes; Sergeant True; Officer B. Rodgers; Officer M. Wilson; Officer C. Randall; Officer Jeffers; and Officer Phillips. Dkt. 17. The FAC alleges three claims for relief: (1) unlawful search of Plaintiff's vehicle as to the individual Defendants in violation of the Fourth Amendment; (2) excessive force as to all Defendants in violation of the Fourth Amendment; and (3) violation of Plaintiff's civil rights under the Bane Act as to all Defendants.

On September 30, 2013, the Court adjudicated Defendants' motion to dismiss, which was directed to the first and third claims for relief. Dkt. 38. As to Plaintiff's first claim for the unlawful vehicle search, the Court dismissed all Defendants *except* Officers Jeffers and Phillips. With regard to his third claim for violation of the Bane Act, Plaintiff acknowledged that he had failed to exhaust his administrative remedies under the California Tort Claim Act and abandoned his claim for damages. The Court therefore granted Defendants' motion to dismiss Plaintiff's third claim to the extent it seeks the recovery of damages and denied the motion with respect to the request for injunctive relief.

## II. DISCUSSION

### A. PLAINTIFF'S MOTIONS IN LIMINE

#### 1. Blood Alcohol Level (Motion No. 1)

Plaintiff moves to exclude evidence of his blood alcohol level, including any toxicological test results, on the ground that Defendants have not disclosed an expert witness qualified to testify regarding the "methods, procedures and adequacy of any such tests and/or results." Pl.'s Mot. at 1, Dkt. 122. As noted, the blood alcohol measurement was made by CVT, apparently a private laboratory used by the CHP. Defs.' Am. Opp'n Ex. D. Defendants' Witness List does not identify any individuals employed by CVT nor anyone who is qualified to render testimony regarding the testing process.[3]

To admit evidence of a driver's blood alcohol level, the proponent of such evidence must demonstrate "a basis for believing that the test which measured blood alcohol was reliable." Davenport v. Dep't of Motor Vehicles, 6 Cal.App.4th 133, 140 (1992). "[T]he foundational requirements for establishing the reliability of test results consist of a showing that (1) the apparatus utilized was in proper working order, (2) the test used was properly

---

[3] Defendants' Witness List identifies eight CHP staff and the phlebotomist. Defs.' Witness List, Dkt. 113. Defendants state that Officer Jeffers and Phillips will "offer an opinion that based on their observations of Mr. Baca's objective signs and symptoms of intoxication and his poor performance of the Field Sobriety Tests" that he was driving under the influence of alcohol. Id. In addition, "all CHP witnesses will express an opinion of the amount of beer Mr. Baca would need to consume to achieve a blood ethyl alcohol level of 0.11 at the time his blood was drawn." Id.

- 4 -

administered, and (3) the operator was competent and qualified." Id.  Reliability of the test result generally must be established through expert testimony.  Brown v. Williams, No. 2:10-CV-00407-PMP, 2013 WL 5370749, at *31 (D. Nev. Sept. 24, 2013), aff'd, 597 Fed.Appx. 417 (9th Cir. 2015) (finding that a toxicology report, "standing alone without expert testimony," was insufficient to establish the level of drugs, if any, that was present).[4]

Here, Defendants contend that expert testimony is unnecessary because "[Plaintiff] already admitted that his [blood alcohol level] was 0.11 percent by virtue of his criminal plea agreement."  Defs.' Am. Opp'n at 3, Dkt. 124.  This contention lacks merit.  As an initial matter, Defendants do not dispute Plaintiff's contention that his misdemeanor "no contest" plea may not be used against him in this action.  See Cahoon v. Governing Bd. of Ventura Unified School Dist., 171 Cal.App.4th 381, 384 (2009) ("[California] Penal Code section 1016(3) provides that a plea of nolo contendere to a misdemeanor 'may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based.'").  That aside, Plaintiff did not—as Defendants insist—admit that his blood alcohol level was 0.11 percent.  Rather, he merely acknowledged that the police report provided a factual basis for the plea agreement.[5]  In addition, a statement in the police report regarding Plaintiff's blood alcohol level is not independently admissible absent the requisite foundation to establish its reliability.  See Davenport, 6 Cal.App.4th at 140.

Equally uncompelling is Defendants' ancillary argument that, under Heck v. Humphrey, 512 U.S. 477 (1994), "excluding Mr. Baca's [blood alcohol level] of 0.11 could improperly imply the invalidity of plaintiff's DUI conviction which, in part, was based on his [blood alcohol level]."  Defs.' Am. Opp'n at 3.  In Heck, the Supreme Court held that a

---

[4] Under Federal Rule of Evidence 702, expert opinion testimony is appropriate if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."

[5] At most, Plaintiff acknowledged that there was a factual basis for a finding that his blood alcohol level was 0.08 percent or greater— as required for violation of California Vehicle Code § 23152(b).

civil rights complaint under § 1983 cannot proceed when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. In this case, Heck is not implicated because Plaintiff's claim of excessive force is based on events that are separate and apart from his offense conduct, which involved driving a vehicle while having a blood alcohol level of at least 0.08 percent. See Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir. 2005) ("Under Heck, Smith would be allowed to bring a § 1983 action, . . . if the use of excessive force occurred subsequent to the conduct on which his conviction was based."). As for Plaintiff's illegal search claim, there is no indication that evidence seized from that search, if any, was used to convict Plaintiff.[6] Therefore, a successful judgment on that claim would not in any way affect the propriety of his DUI conviction.

Plaintiff's motion in limine no. 1 is GRANTED. Defendants are precluded from presenting any evidence or argument regarding the toxicological test results, including that his blood alcohol level was reported to be 0.11 percent.

### 2. Plaintiff's Criminal History (Motion No. 2)

Plaintiff moves to exclude evidence of his misdemeanor DUI conviction on the ground that it was not disclosed by Defendants with their initial disclosures, as required by Federal Rule of Civil Procedure 26(a). Alternatively, Plaintiff contends evidence of his conviction would be unduly prejudicial and is not otherwise the type of crime that may be used to impeach his credibility. Pl.'s Mot. at 1.

#### *a) Compliance with Rule 26(a)*

Rule 26(a) imposes an affirmative duty on parties to disclose all individuals with potentially discoverable information, as well as all documents and tangible things that a

---

[6] Without discussion or citation to any legal authority, Plaintiff also complains that Defendants have not disclosed a witness to lay the foundation for the results or the chain of custody of the challenged blood samples. Pl.'s Mot. at 1. Defendants do not address this contention. Nonetheless, the Court notes that "[t]he possibility of a break in the chain of custody goes only to the weight of the evidence." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

party may use to support its claims or defenses. Fed. R. Civ. P. 26(a). Parties also have a duty to provide supplemental disclosures when they learn of additional information that should have been provided under Rule 26(a). Id. 26(e)(1). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Where a party seeks to exclude evidence under Rule 37(c)(1), the burden is on the party facing sanctions to establish that the lack of compliance was harmless or substantially justified. Id. at 1107.

Defendants do not dispute that they failed to disclose any documents relating to Plaintiff's conviction with their initial disclosures or offer any justification for their failure to do so. Instead, Defendants posit that their failure to comply with Rule 26 is harmless since the documents were listed in their trial exhibit list and with their oppositions to Plaintiff's motions in limine. In neither his moving papers nor his reply does Plaintiff claim that he suffered any prejudice resulting from Defendants' untimely disclosure of documents pertaining to his conviction.[7] As such, the Court finds that Defendants' failure to comply with Rule 26(a) was harmless and that the exclusion of the documents is not warranted as a sanction under Rule 37(c)(1). See Yeti, 259 F.3d at 1106.

### b) Undue Prejudice

Alternatively, Plaintiff contends that allowing evidence of his DUI misdemeanor conviction would be unduly prejudicial relative to its marginal probative value because it is not germane to whether the CHP officers used excessive force during his detention at the CHP office or had grounds to search his vehicle. Defendants respond that Plaintiff's conviction is necessary to (1) prevent the jury from speculating that Plaintiff was not prosecuted or convicted for DUI and (2) demonstrate that the officer had probable cause "to

---

[7] Both parties incorrectly discuss prejudice in the context of the potential prejudice resulting from the introduction of the convictions to the jury. The prejudice analysis under Yeti is whether the party to whom the disclosures were to be made has been prejudiced by the failure of the other party to disclose or untimely disclosure of the information and documentation required by Rule 26(a).

pull over and ultimately arrest plaintiff for DUI." Defs.' Am. Opp'n at 4.  Neither contention is persuasive.

To prevail on an excessive force claim under § 1983, a pretrial detainee must show the force purposely or knowingly used against him was objectively unreasonable.  Kingsley v. Hendrickson, 135 S.Ct. 2466, 2472-73 (2015).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id. at 2473.  As such, whether the officers had probable cause to arrest Plaintiff in the first instance or whether he was later convicted of a DUI is not probative of whether the officers' use of force at the CHP Office was objectively reasonable.  See id.; see also Sanford, 258 F.3d at 1120 ("Excessive force used after an arrest is made does not destroy the lawfulness of the arrest."); see also Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001) (noting that probable cause is established when *at the time of the arrest* "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.").  Defendants' remaining concerns regarding possible juror speculation can be accommodated through the use of an appropriate jury instruction, if necessary.[8]

Plaintiff's motion in limine no. 2 is GRANTED.  Defendants are precluded from presenting any evidence or argument regarding the fact that Plaintiff pled "no contest" to and suffered a conviction for a violation of California Vehicle Code § 23152(b).

### 3. Expert Testimony (Motion No. 3)

Plaintiff moves to preclude Defendants from offering expert testimony from the CHP officers regarding his level of intoxication on the ground that they "have not been proffered as experts to testify on such matters."  Mot. at 2.  However, expert testimony is not necessarily required to show that Plaintiff was intoxicated.  United States v. Mastberg,

---

[8] Plaintiff also contends—and Defendants do not dispute—that a misdemeanor DUI is not a crime involving dishonesty or a false statement.  Fed. R. Evid. 609(a)(2). Therefore, evidence of Plaintiff's misdemeanor conviction is not otherwise admissible for impeachment purposes.  Id.

1  503 F.2d 465, 470 (9th Cir. 1974) ("[A] lay witness may state his opinion that a person
2  appeared nervous or intoxicated."). Further, Defendants did, in fact, disclose the officers as
3  unretained experts on the matter of Plaintiff's intoxication. Defs.' Unretained Expert
4  Witness Disclosure, Dkt. 72.
5       More problematic for Defendants is the *scope* of the proposed expert opinions.
6  Officer Jeffers and Phillips will "offer an opinion based on their observations of [Plaintiff]
7  objective signs and symptoms of intoxication and his poor performance on the Field
8  Sobriety Tests, . . . ." Id. Defendants also state that "all unretained expert witnesses will
9  express an opinion of the amount of beer Mr. Baca would need to consume to achieve a
10 blood ethyl alcohol level of 0.11 at the time his blood was drawn." Id.; see also Defs.
11 Witness List at 2 (same). With regard the latter opinion, the Court has ruled above that
12 Defendants cannot present evidence or argument that Plaintiff's blood alcohol level was
13 0.11 percent, absent expert testimony to establish the reliability of that measurement. Since
14 Defendants concede they lack such an expert, they cannot, by extension, proffer testimony
15 from the officers regarding the number of beers that Plaintiff likely consumed to reach a
16 0.11 percent blood alcohol level.
17      In sum, Plaintiff's motion in limine no. 3 is GRANTED IN PART and DENIED IN
18 PART. The motion is DENIED to the extent Plaintiff seeks to preclude the CHP officers
19 from offering testimony regarding whether Plaintiff appeared to be intoxicated. Defendants
20 may offer lay testimony based on the officers' observations of Plaintiff, as well as expert
21 opinion testimony, provided that the requisite foundation is laid, pursuant to Federal Rule
22 of Evidence 702. The motion is GRANTED insofar as Defendants seek to present any
23 testimony that Plaintiff's blood alcohol level was 0.11 percent or the number of alcoholic
24 drinks Plaintiff likely consumed prior to his arrest.
25     **B.**    **DEFENDANTS' MOTIONS IN LIMINE**
26         **1.**    **Lost Income (Motion No. 1)**
27      Defendants move the Court to exclude any evidence regarding Plaintiff's lost
28 income damages on the ground that Plaintiff failed to identify lost income as an element of

1 his damages in his Rule 26 initial disclosures.  Plaintiff acknowledges that his initial
2 disclosure did not identify lost income as part of his claim for damages, but states that
3 Defendants "had the full opportunity to depose Plaintiff regarding his lost income during
4 his deposition."  Pl.'s Opp'n at 2, Dkt. 125.  Perhaps so, but Plaintiff confirmed during his
5 deposition that he is not seeking lost income as part of his damages.  Defs.' Mot. at 2
6 (citing Pl.'s Depo. at 110:24-111:1), Dkt. 121.[9]  Given Plaintiff's admitted failure to
7 comport with his Rule 26 obligation to disclose evidence of lost wages, coupled with his
8 representation that he is not pursuing such damages, the Court finds that it would be
9 prejudicial to allow Plaintiff to present evidence or testimony at trial regarding his lost
10 income.  See Yeti by Molly, 259 F.3d at 1106.

Defendants' motion in limine no 1 is GRANTED.  Plaintiff is precluded from offering any evidence or argument regarding lost income resulting from Defendants' alleged misconduct.

### 2. Plaintiff's Medical Costs (Motion No. 2)

Defendants move to preclude Plaintiff from presenting evidence of his damages consisting of his medical care costs on the ground that he failed to provide a computation of his damages as part of his initial disclosures.  Rule 26(a)(1)(A)(iii) requires each party to provide to the other party "a computation of each category of damages claimed by the disclosing party . . . ."  Plaintiff does not dispute that he never provided such a computation, but argues that his failure to comply is harmless because the information is contained within the medical records already in their possession.  However, a party cannot avoid its obligation to provide a damage calculation merely by producing records ostensibly containing such information.  See Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd., No. 07 C 4023, 2008 WL 1883435, at *6 (N.D. Ill. Apr. 28, 2008 ("Rule 26 requires that the calculation be done by the party claiming damages, not its opponent, who under the

---

[9] The Court notes that Defendants failed to provide excerpts of Plaintiff's deposition transcript as an exhibit in support of their motions in limine.  However, Plaintiff does not dispute Defendants' characterization of his deposition testimony.

defendants' unsupportable theory is left to sift through extensive records of the defendants and guess at what the damage claim is.").

Defendants' motion in limine no. 2 is GRANTED. Plaintiff is precluded from offering any evidence or argument regarding his medical costs resulting from Defendants' alleged misconduct.

### 3. Plaintiff's Injury at Santa Rita Jail (Motion No. 3)

Defendants move for exclusion of evidence of plaintiff's injury while at Santa Rita Jail ("Santa Rita"). Plaintiff states that he does not oppose this motion. Pl.'s Opp'n at 2. Accordingly, Defendants' motion in limine no. 3 is GRANTED. Plaintiff is precluded from offering any evidence or argument regarding any injuries he sustained while detained at Santa Rita.

### 4. Evidence Invalidating DUI Conviction (Motion No. 4)

Citing Heck, Defendants move to exclude evidence that would necessarily imply the invalidity of Plaintiff's DUI conviction, including, without limitation: "that there was no probable cause for plaintiff's arrest; that Plaintiff satisfactorily performed the FSTs; that Plaintiff's [blood alcohol concentration] was less than 0.11; and/or that Plaintiff was falsely arrested." Defs.' Mot. at 2.[10] As discussed above, Plaintiff's claims in this action do not challenge the validity of his DUI conviction. As such, the concerns underlying Heck are not implicated.

Defendants also contend that the aforementioned evidence is not relevant, since Plaintiff has affirmatively stated that he is *not* challenging the legality of his arrest. The Court agrees that since the legality of the arrest is not at issue, it would confuse the jury to hear evidence pertaining to whether his arrest was legal. See Fed. R. Evid. 403. For the same reasons, whether Plaintiff's blood alcohol level was below 0.11 percent is not relevant. What *is* relevant, however, is Plaintiff's conduct in relation to the officers, which,

---

[10] In his Trial Brief, Plaintiff does not allege that he satisfactorily performed the FSTs. Rather, he states that "neither Officer Phillips nor Officer Jeffers gave any indication that Plaintiff erred in the course of performing any of the requested tests." Pl.'s Trial Brief at 1, Dkt. 59.

in turn, is informed by whether and to what extent he was intoxicated. Defendants maintain that Plaintiff was drunk and belligerent, and that their use of force was therefore reasonable and justified under the circumstances. Plaintiff claims the opposite and challenges the officers' credibility regarding their account of the events. Since the parties' credibility will play a key role in the trier of fact's assessment of the parties' respective credibility, the circumstances surrounding Plaintiff's arrest, including his performance of the FSTs, are admissible, even if the legality of his arrest is itself not at issue. See Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002) ("[P]olice misconduct cases almost always turn on a jury's credibility determinations.").

Defendants' motion in limine no. 5 is GRANTED IN PART and DENIED IN PART. Plaintiff is precluded from arguing that Defendants lacked probable cause for his arrest; that his blood alcohol level was less than 0.11 percent; or that he was falsely arrested. Plaintiff is not precluded from presenting testimony regarding the circumstances leading to his arrest, including his performance of the FSTs.

### 5. Unlawful Nonconsensual Blood Draw (Motion No. 5)

Defendants move to preclude Plaintiff from offering any evidence or making any argument "that the nonconsensual blood draw was unnecessary, unreasonable or unlawful." Defs.' Mot. at 4. According to Defendants, they had a legal right to extract a blood sample from Plaintiff by force based upon his refusal to take a breath or blood test. Id. In addition, Defendants assert that the FAC does not allege any claim that the nonconsensual blood draw itself violated his constitutional rights. Id. Plaintiff's response to Defendants' in limine motion is vague, conclusory and unhelpful. He states only that their characterization of his testimony is "not supported by any evidence" and "is false and misleading." Pls.' Opp'n at 3. He adds that "[t]he jury must determine whether the seizure of [his] blood was reasonable or unreasonable." Id.

Plaintiff's assertion that the jury must address the reasonableness of Defendants' "seizure" of his blood presupposes that a claim that the blood extraction violated Plaintiff's constitutional rights is, in fact, properly before the Court. A non-consensual extraction of

blood implicates the Fourth Amendment's protection against *unreasonable searches and seizures*. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989); Schmerber v. California, 384 U.S. 757, 766-72 (1966).  The pleadings allege no such claim.  The first and second claims for relief in the FAC are for "Unlawful Search of Automobile" and "Use of Excessive Force," respectively.  Dkt. 17.[11]  No allegation or claim is made that the blood draw constituted an unreasonable search and seizure in violation of the Fourth Amendment.  Consistent with the FAC, the parties' subsequently-filed Joint Case Management Statement characterizes the operative claims as follows:  "Plaintiff alleges violations of the fourth amendment based on the search of his vehicle . . . and *excessive force* related to a forced blood draw after plaintiff's refusal to submit to a chemical test."  Jt. Case Mgt. Stmt. at 2, Dkt. 35 (emphasis added).  In his trial brief, however, Plaintiff alleges for the first time that the blood draw was illegal.  Pl.'s Trial Brief at 5.  However, Plaintiff cannot unilaterally add a new claim by alleging it in his trial brief, particularly where, as here, the deadline to amend the pleadings and to complete discovery have long since passed.  See Order for Pretrial Preparation, Dkt. 43.

The fact that Plaintiff has not alleged a Fourth Amendment violation based on a nonconsensual blood draw does not ipso facto mean that the circumstances surrounding the extraction are irrelevant.  To the contrary, the Ninth Circuit has held that those facts are pertinent to whether the amount of force used by Defendants was objectively reasonable.  Hammer v. Gross, 932 F.2d 842, 845, 846 (9th Cir. 1991).  In particular, a jury is entitled to consider (1) whether the individual was "actively resisting the extraction of his blood," (2) the "severity of the crime at issue," (3) whether he posed an immediate threat to the safety of the officers or others, and (4) whether the officers "refused to respect a reasonable request to undergo a different form of testing.  Id. (internal quotations and citations

---

[11] Within that claim, the pleadings allege that "Defendant Officers Phillips, Jeffers, Randall, Wilson, Rodgers and Sergeants Grimes and True, and numerous other unknown CHP Officers or employees, used excessive and deadly force against Plaintiff, which violates Plaintiff's Fourth Amendment rights to be free from unlawful and physically intrusive governmental conduct."  FAC ¶ 45.

omitted). In view of these considerations, the reasonableness of Defendants' conduct, including whether the forcible extraction of Plaintiff's blood was called for under the circumstances, may appropriately be considered by the jury in assessing whether the amount of force used by Defendants at the time of the incident was objectively reasonable. Accordingly, Defendants' motion in limine no. 5 is DENIED.

### 6. Undisclosed Evidence and Witnesses (Motion No. 6)

Defendants move to preclude Plaintiff from calling and eliciting testimony from the following individuals disclosed on his witness list on the grounds that they were not listed in his Rule 26(1) initial disclosures: Christine Allen, MPT; Dr. Richard Baxter; Dr. Frederico Moure; and an unspecified treating physician at the Veteran's Administration. Defs.' Mot. at 4. Plaintiff does not dispute that he failed to disclose these individuals, as required by Rule 26, but states, unresponsively, that he will not rely on "any medical records not produced in discovery," other than recent records he anticipates receiving from the Veterans Administration, which he will produce to the defense as soon as he receives them. Given Plaintiff's failure to demonstrate that his non-compliance with his Rule 26 obligations was substantially justified or harmless, the Court finds that exclusion of these witnesses is appropriate. See Yeti By Molly, 259 F.3d at 1106. Defendants' motion in limine no. 6 is GRANTED.

### 7. Testimony Regarding Causation (Motion No. 7)

Defendants move to preclude Plaintiff from offering any evidence that his injuries are *caused* by their alleged use of excessive force on the ground that he has not disclosed any experts to offer such testimony. Defendants fail to cite any statutory or decisional authority to support their request. Plaintiff inexplicably fails to respond to this motion.[12]

---

[12] In connection with Defendants' motion in limine no. 3, Plaintiff affirmatively stated his non-opposition to the motion. In the case of this motion, however, Plaintiff's response brief offers no response at all—suggesting that the failure to address the motion was inadvertent. While the Court does not countenance Plaintiff's counsel's apparent lack of diligence, it declines to grant a frivolous motion simply because opposing counsel has neglected to address it.

Expert testimony is necessary when lay persons are unable to make an informed judgment without the benefit of such testimony. See Caro v. Calderon, 165 F.3d 1223, 1227 (9th Cir. 1999).  Here, Plaintiff alleges that the officers present at the CHP Office slammed his face on the concrete floor and repeatedly beat and kicked him on his head, back, arms and legs.  As such, Plaintiff obviously is in a position to testify about the pain and injuries he sustained as a result of this alleged conduct. See Martin v. Siller, 17 Cal.App.2d 153, 158 (1936) ("Common reasoning tells us that if the eye strikes the end of a pipe, and an injury to the eye results, expert testimony is unnecessary.").  In the event Plaintiff attributes an injury to Defendants' conduct that is the proper subject of expert testimony, Defendants may interpose a trial objection at the appropriate time. E.g., Ely v. Dick, No. 2:13-CV-2185-RSM) 2015 WL 1965263, at *3 ((W.D. Wash., Apr. 30, 2015) ("Where an injury involves 'obscure medical factors which are beyond an ordinary lay person's knowledge, necessitating speculation in making a finding,' the plaintiff must produce expert testimony to make this showing of a causal link between defendant's negligent act and the injury complained of.").  Defendants' motion in limine no. 7 is DENIED.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion in limine no. 1 is GRANTED.  Defendants are precluded from presenting any evidence or argument regarding the toxicological test results, including his blood alcohol level of 0.11 percent.

2. Plaintiff's motion in limine no. 2 is GRANTED.  Defendants are precluded from presenting any evidence or argument regarding the fact that Plaintiff pled no contest to and suffered a conviction for violating California Vehicle Code § 23152(b).

3. Plaintiff's motion in limine no. 3 is GRANTED IN PART and DENIED IN PART.  The motion is DENIED to the extent Plaintiff seeks to preclude the CHP officers from offering testimony regarding whether Plaintiff appeared to be intoxicated.  Defendants

may offer lay testimony based on the officers' observations of Plaintiff, as well as expert opinion testimony, provided that the requisite foundation is laid, pursuant to Federal Rule of Evidence 702.  The motion is GRANTED insofar as Defendants seek to present any testimony that Plaintiff's blood alcohol level was 0.11 percent or the number of alcoholic drinks Plaintiff likely consumed prior to his arrest.

4. Defendants' motion in limine no. 1 is GRANTED.  Plaintiff is precluded from offering any evidence or argument regarding lost wages resulting from Defendants' alleged misconduct.

5. Defendants' motion in limine no. 2 is GRANTED.  Plaintiff is precluded from offering any evidence or argument regarding his medical costs resulting from Defendants' alleged misconduct.

6. Defendants' motion in limine no. 3 is GRANTED.  Plaintiff is precluded from offering any evidence or argument regarding any injuries he sustained while detained at Santa Rita.

7. Defendants' motion in limine no. 4 is DENIED.

8. Defendants' motion in limine no. 5 is GRANTED IN PART and DENIED IN PART.  Plaintiff is precluded from arguing that Defendants lacked probable cause for his arrest; that his blood alcohol level was less than 0.11 percent; or that he was falsely arrested.  With regard to the FSTs, Plaintiff may testify that the officers did not inform him that he erred in performing those tests.

9. Defendants' motion in limine no. 6 is GRANTED.  Plaintiff is precluded from presenting testimony at trial from: Christine Allen, MPT; Dr. Richard Baxter; Dr. Frederico Moure; and an unspecified treating physician at the Veteran's Administration.

10. Defendants' motion in limine no. 7 is DENIED.

11. The action is REFERRED to Magistrate Judge Laurel Beeler to schedule a further settlement conference in this action, to take place within 60 days of the date this order is filed.

IT IS SO ORDERED.

Dated: 12/19/15

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge